# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **DUSTINE TODD,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **3:15-cv-01117-AKK** |
| **TERRY WOODS and MICHAEL** ) | |
| **GEAN,** ) | |
| ) | |
|     **Defendants.** ) | |

## MEMORANDUM OPINION

Dustine Todd brings this lawsuit pursuant to 42 U.S.C. § 1983 against two officers in the Lauderdale County, Alabama Sheriff's Department, Sgt. Terry Woods and Deputy Michael Gean (collectively the Defendants). Todd alleges that the Defendants, acting in their individual capacities, violated his constitutional rights under the Fourteenth and Fourth Amendments when they arrested him on several misdemeanor charges purportedly without probable cause. The Defendants have now jointly moved for summary judgment on the grounds of qualified immunity. Doc. 42. This motion is fully briefed, docs. 43; 50; 54, and ripe for review. After careful consideration of the record and the parties' arguments, the

court finds that the Defendants are entitled to qualified immunity and that their motion is due to be granted.[1]

## I. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. Indeed, it is explicitly not the role of the court to "weigh conflicting evidence or to make credibility determinations." *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *see also Anderson*, 477 U.S. at 255 (explaining "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v.*

---

[1] The parties have also filed several motions pertaining to various evidentiary issues. The court has ruled on those motions in an order filed contemporaneously with this one, doc. 56. Consequently, the court will not address in detail the parties' numerous evidentiary arguments here.

*Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Nor will "a . . . 'scintilla of evidence in support of the nonmoving party . . . suffice to overcome a motion for summary judgment.'" *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). Instead, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriately granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## II.   **FACTS**[2]

On January 24, 2015, a family friend, Chris Woods, contacted Todd, a veteran Alabama state trooper who was off-duty at the time, regarding a stolen all-terrain vehicle (ATV). Docs. 17 at 2–3; 20 at 2; 50 at 20. At Woods' request,

---

[2] Todd lodges numerous objections to Defendants' evidentiary submissions. Many of these objections are duplicative of those raised in an earlier motion which the court has already rejected. *See* Doc. 56. The other objections involve the use in various affidavits of collective terms such as "they" or "people" to describe the group of individuals arrested with Todd. Todd argues these terms are so ambiguous they are due to be stricken. While some confusion does exist regarding the precise number of people with Todd that night, this fact is entirely peripheral to the issues in this case. Moreover, the number of individuals at the scene is verifiable via admissible evidence—the first hand testimony of those present. Finally, Todd fails to provide any legal basis for objecting to the use of these collective terms.
  Similarly, Todd's brief contains repeated requests to strike statements made in various affidavits as either inconsistent with the affiants prior deposition testimony or with statements made at the time of the incident. The underlying statements at issue have little bearing on the resolution of this case, and Todd fails to fully articulate any legal basis for striking these statements beyond noting their inconsistency with prior statements. In any event, the court accepts the version of the facts submitted by Todd as true rendering these repetitive requests to strike evidence contrary to Todd's facts irrelevant to this proceeding. Accordingly Todd's requests are uniformly due to be denied.

Todd called the Lauderdale Sheriff's Department to report the vehicle stolen. *Id.* Later that day, Todd, accompanied by his wife and children, visited Woods' home where they were eventually joined by a third man, Dustin Kelly. *Id.* After consuming approximately three beers, Todd went for an evening drive with Woods and Kelly. Doc. 17 at 4.

Shortly after leaving Woods' residence, the three men learned that Wesley Holloway had just listed an ATV, very similar in appearance to the one stolen from Woods, for sale on a social media website. Doc. 50 at 20–21. In response to this news, Woods, Todd, and Kelly met up with several other people, one of whom knew Holloway and thought she could persuade him to return the missing ATV. *Id.* at 21. Woods, for his part, planned to offer Holloway money in exchange for the safe return of the ATV. *Id.* Accordingly, sometime after midnight, the group drove to the Holloway residence. Doc. 50 at 21. Todd later testified that he did not notice either a posted "No Trespassing" sign or a gate impeding access to the property. Doc. 44-15 at 24, 25, 34.

After the group arrived at Holloway's residence, two individuals approached the front door and knocked several times. Doc. 50 at 22. Holloway refused to answer and instead called the police at around 1:00 a.m. to report that unknown individuals were "beatin' on [his] door." Doc. 44-17 at 3. Holloway also called his father who arrived at the property before the police. Docs. 50 at 22; 43 at 4;

44-9 at 3. Todd and Woods exited their vehicle at this point and approached Holloway's father, doc. 50 at 22, prompting Holloway, who had armed himself with a rifle, to emerge from the residence. Docs. 17 at 6; 20 at 2; 43 at 4. A short time thereafter, Defendant Gean, responding to the 9-1-1 call, reached Holloway's home and took control of the situation. Docs. 50 at 22; 44-16 at 37. Both Holloway and Gean testified that they recognized Todd as a state trooper. Docs. 44-3 at 3; 44-9 at 3; 44-16 at 36–37.

Sergeant Woods, Deputy Gean's supervisor and the other defendant in this case, arrived at the scene a few minutes later and assumed command. Docs. 44-3 at 2–3; 44-16 at 37–39. Given Holloway's status as a fellow law-enforcement officer, Sergeant Woods contacted then Chief Deputy District Attorney Will Powell and asked Deputy Gean to describe the situation to Powell over the phone. Docs. 44-3 at 2–3; 44-16 at 39–40. Powell instructed the officers to charge Todd, and the other adults with him, with a series of misdemeanor offenses, including criminal trespassing in the second degree, disorderly conduct, harassment, and public intoxication. Docs. 44-3 at 3; 44-16 at 39–41. Pursuant to this instruction, the Defendants arrested Todd and transported him to the county jail where he posted bond approximately eight hours later. Docs. 17 at 8–10; 20 at 3. Ultimately, the Chief Magistrate for Lauderdale County found that no probable

cause existed to issue a warrant for Todd's arrest, effectively concluding the criminal proceedings underlying this case. Docs. 50 at 24; 20 at 3; 51-7 at 2–3.

## III. DISCUSSION

The sole issue before this court is whether the Defendants are entitled to qualified immunity with respect to Todd's wrongful arrest claim. The defense of qualified immunity reflects both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Accordingly, "government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for [the] suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999). "'[A]ll but the plainly incompetent or one who is knowingly violating the federal law'" are entitled to the protection of qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity, however, "does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's federal rights." *Gaines v. Wardynski*, 871 F.3d 1203, 1207 (11th Cir. 2017).

As a threshold matter, a public official must have acted within the scope of her discretionary authority to invoke qualified immunity. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). The term discretionary authority includes "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of [her] duties,' and (2) were 'within the scope of [her] authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). When conducting this inquiry, Eleventh Circuit precedent requires the district court to put aside "the fact that [the act] may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

Here, it is well-established that on-duty police officers making an arrest act within the proper scope of their discretionary authority. *See, e.g.*, *Lee*, 284 F.3d at 1194 (explaining that "there can be no doubt that [the defendant officer] was acting in his discretionary capacity when he arrested [the plaintiff]"); *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (same); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (same). Todd seeks to escape this conclusion by arguing that the officers acted outside their discretionary authority because Alabama law specifically forbids warrantless arrests for misdemeanor offenses not committed in the officer's presence. *See* ALA. CODE § 15-10-3(a)(1). While it may seem logical

to believe that violating the law is never within an official's discretionary authority, the Eleventh Circuit has explained "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an 'untenable' tautology." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Instead, the court "look[s] to the general nature of the defendant's action" putting aside the purported fact of that action's illegality. *Holloman*, 370 F.3d at 1266. Accordingly, the court finds that the defendant officers were acting within the scope of their authority when they arrested Todd and transported him to the Lauderdale County Jail.

After the defendant establishes that she acted within the scope of her discretionary authority, "'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" *Vinyard*, 311 F.3d at 1346 (quoting *Lee*, 284 F.3d at 1194). To make this showing, "the plaintiff must demonstrate . . . the following two things: (1) that the defendant violated her constitutional rights, and (2) that, at the time of the violation, those rights were 'clearly established . . . in light of the specific context of the case, not as a broad general proposition.'" *Gaines*, 871 F.3d at 1208 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled, in part, on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The court "may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings." *Jones*, 857 F.3d at 851.

The court turns first to the question of whether the Defendants violated Todd's constitutional rights by arresting him. The Fourth Amendment provides that an individual has a right to freedom from "unreasonable searches and seizures." U.S. CONST. amend. IV. In this context, "an arrest is a seizure of the person, . . . and the 'reasonableness' of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). "'Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002) (quoting *United States. v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)). In the context of a qualified-immunity defense, however, the mere absence of probable cause is insufficient "to remove the shield of qualified immunity." *Skop*, 485 F.3d at 1137. Instead, an officer need only show the existence of "arguable probable cause," which asks only whether "'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff[]." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)).

Here, the defendant officers arrested Todd for commission of four Alabama misdemeanor offenses, public intoxication, disorderly conduct, harassment, and trespass in the second degree. Doc. 50 at 22–24. Todd argues that because Alabama law clearly specifies that an officer may only effectuate a warrantless arrest for a misdemeanor offense if that offense was committed in the presence of the arresting officer, *see* ALA. CODE. § 15-10-3, the officers lacked arguable probable cause for the arrest because they did not personally witness Todd's commission of any of the charged crimes. Neither party disputes that arguable probable cause need only exist as to one of the listed offenses for the Defendants to properly claim qualified immunity. *See Skop*, 485 F.3d at 1138 (noting that if arguable probable cause existed to effectuate an arrest for either of two crimes, the arresting officer was entitled to qualified immunity). Therefore, for purposes of this analysis, the court will focus only on the charge of trespass in the second degree.

Alabama law provides that "[a] person is guilty of criminal trespass in the second degree if [she] knowingly enters or remains unlawfully in a building or upon real property which is fenced or enclosed in a manner designed to exclude intruders." ALA. CODE § 13A-7-3(a). Alabama law further provides that remaining on a property unlawfully means remaining "upon a premise when . . . not licensed, invited or privileged to do so." ALA. CODE. § 13A-7-1(3). Both land

and buildings qualify as premises in Alabama. ALA. CODE § 13A-7-1(5); *see also Chambers v. City of Opelika*, 698 So. 2d 792, 795 (Ala. Crim. App. 1996). The "remains unlawfully" language in the statute is intended to apply to cases where "a person enters with license or privilege but remains after termination of such license of privilege." Commentary, ALA. CODE § 13A-7-1.

Todd filed an affidavit in opposition to summary judgment in which he attests that Holloway's property was not marked with a "No Trespassing" sign, doc. 51-1 at 2, and accordingly he argues that the defendant officers cannot contend that he was subjectively aware that he had entered or was remaining unlawfully on Holloway's property. However, for the reasons enumerated in this court's previous ruling, doc. 56, Todd's affidavit is a sham and is due to be stricken. Moreover, Todd's affidavit is still insufficient to create a material factual issue. Briefly, both Defendants, who arrived separately, testified that the Holloway property was marked with a "No Trespassing" sign, docs. 44-16 at 24; 44-4 at 2–3, a fact they contemporaneously related to the Chief Deputy District Attorney. Doc. 44-16 at 39–40. Further, a picture taken later that morning shows a gate marked with a "No Trespassing" sign, docs. 44 at 2; 44-11 at 2. *See, e.g.*, *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (explaining that "'when documentary evidence 'blatantly contradicts' a plaintiff's account . . . a court should not credit the plaintiff's version on summary judgment'") (quoting *Witt v.*

*W. Va. State Police*, 633 F.3d 272, 276–77 (4th Cir. 2011)); *Johnson v. Niehus*, 491 F. App'x 945, 951 (11th Cir. 2012) (explaining that a district court is not obliged to credit the non-movant's self-serving evidence "which is blatantly contracted by the . . . record . . . [and] that no fair-minded jury could return a verdict for [the non-movant]"); *Vicks v. Knight*, 380 F. App'x 847, 852 (11th Cir. 2010) (explaining that summary judgment was appropriately granted because "a reasonable factfinder could not believe" the non-movant's assertions because they were "contradicted by all of the relevant evidence, with the exception of the [non-movant's] own affidavit").

Moreover, the relevant inquiry is not whether Todd committed a crime, but whether the arresting officers had arguable probable cause to arrest him that night. *See Scarbrough*, 245 F.3d at 1303 (11th Cir. 2001) (explaining that qualified immunity is evaluated by information known at the time not "by hindsight based on later events") (citation omitted); *see also Skop*, 485 F.3d at 1137 (noting that an officer is not automatically liable "for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause"); *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) (pointing out that "what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct"). Therefore, Todd's subjective knowledge with respect to the trespass is

irrelevant to the legal inquiry which this court must undertake to resolve the question of whether the Defendants in this case are entitled to qualified immunity.[3]

Accordingly, the court will assume that Todd did not see the "No Trespassing" signs and, as he belatedly asserts in his affidavit, that the property had no such signs. Still, the factual circumstances known to the officers at the time of the arrest provide a sufficient basis for a reasonable police officer to conclude that Todd was committing a crime in their presence, criminal trespass in the second degree. It is undisputed that the Defendants were responding to a 9-1-1 call received after midnight from a homeowner reporting "a bunch of people" "beatin' on [the] door" of his home. Docs. 44-17 at 3; 44-16 at 35. The caller also reported to the 9-1-1 operator that he was armed, and might confront the intruders. Doc. 44-17 at 6, 11.

When Deputy Gean and the other officers arrived on the scene, they encountered a drunken mob outside the residence – they saw persons drinking, docs. 44-16 at 38, 41; 44-4 at 3, a case of beer in one of the vehicles, docs. 44-3 at

---

[3] Similarly, Todd's contention that he believed he was licensed to enter the property because one member of his group knew the property owner misses the mark by confusing the requirements of criminal liability with the arguable probable case standard that applies here. It is irrelevant that Todd may not actually have committed the crime of criminal trespassing in the second degree. What matters for purposes of this motion is whether a reasonable officer could have concluded that probable cause existed for arresting Todd. Here, given the information known to the officers at the time, it was eminently reasonable to determine that Todd was knowingly remaining on the premises without a license or invitation, and that consequently arguable probable cause existed for an arrest.

3; 44-4 at 3, and they smelled alcohol on the group. Docs. 44-16 at 36; 44-4 at 3. Further, the officers observed Todd, and the group he was with, engaged in a discussion with Holloway, docs. 44-3 at 3; 51-3 at 28–29, the 9-1-1 caller who informed the responding officers that he was afraid for his life and had confronted the mob with a rifle out of fear for his safety and for the safety of his family. Docs. 51-3 at 38; 44-3 at 3. Indeed, the 9-1-1 report coupled with the late hour alone could have led a reasonable officer to assume that Todd, and the others, were unlawfully on the property and had knowledge of that fact. Accordingly, the totality of the factual circumstances confronting the responding officers in this case is more than sufficient to establish the existence of arguable reasonable probable cause to arrest Todd for trespassing on Holloway's property.[4]

---

[4] Although Todd was not charged with the offense of criminal trespass in the third degree, that crime requires only that an individual "knowingly enter[] or remain[] unlawfully in or upon premises." ALA. CODE § 13A-7-4(a). When "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Moreover, "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). Indeed, the Eleventh Circuit has said "'[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offence for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.'" *Lee*, 284 F.3d at 1196 (quoting *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973)); *see also Collins v. Ensley*, 498 F. App'x 908, 910 (11th Cir. 2012) (same).

In light of the foregoing discussion, even if the property was unfenced, there was no gate at the entrance to the driveway marked with a "No Trespassing" sign, and no one ever asked Todd to leave the property, a reasonable officer still could have concluded that probable cause existed to effectuate an arrest for criminal trespass in the third degree. Indeed, it is undisputed that the Defendants responded to a 9-1-1 call in which the caller reported being in fear for his life because of a group of individuals congregating on his property after midnight and knocking on the door to his home while calling for him to come outside. Docs. 44-17 at 2–4; 44-3 at 3.

Significantly, however, the Defendants, the other responding officers, and the homeowner indicated that the property was gated and marked with a sign reading "Private Property – No Trespassing," docs. 44-16 at 24; 44-4 at 2–3; 44-5 at 2; 44-7 at 2; 44-9 at 2, a fact supported by a photograph taken later that morning, doc. 44-11 at 2. Indeed, the Defendants specifically mentioned the existence of the "No Trespassing" sign when they discussed potential charges with a District Attorney before making any arrests that night. Doc. 44-16 at 39–40. The officers' observations, the homeowner's report, and the contemporaneous photograph "blatantly contradict" Todd's account regarding the purported absence of a "No Trespassing" sign, and, as such, Todd's testimony is not due deference. *See Morton*, 707 F.3d at 1284.

That the Defendants acted reasonably based on the information at hand is further reinforced by their decision to contact a District Attorney before arresting Todd, doc. 44-16 at 39–40. *See Poulakis v. Rogers*, 341 F. App'x 523, 533 (11th Cir. 2009) (noting that "pre-arrest consultation and advice of a district attorney [is] one circumstance contributing to the objective reasonableness of an officer's conduct"). Moreover, one of the Defendants, Deputy Gean, testified that the property was fenced, a fact not disputed by Todd. *See* Docs. 44-16 at 8, 42; 51-1 at

---

Given the fact of the 9-1-1 report and the late hour, a reasonable officer could have assumed that Todd, and the others, were unlawfully on the property and had knowledge of that fact establishing arguable probable cause to arrest Todd for criminal trespass in the third degree. Under binding circuit precedent, any basis for a valid arrest is all that is required to entitle the Defendants to qualified immunity.

2. Todd does argue that the fence belonged to an adjacent property, doc. 50 at 7, 23, but the significance of this distinction is lost on the court. It may well be that the fence belonged to a neighbor, or was otherwise on the neighbor's property. However, this factual issue is not dispositive. Arguable probable cause does not require the officer to have perfect knowledge of the scene confronting them. An officer who noticed a fence around part of a property, at night, in the dark, could have reasonably assumed that the fence was part of the subject property rather than belonging to a neighbor's property. In short, an arresting officer "'cannot be held to a title-searcher's knowledge of metes and bounds.'" *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985) (quoting *Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1985)).

## IV. <u>CONCLUSION</u>

The record before the court establishes that the Defendants knew at the time of arrest that Todd was on a property that was fenced, gated, and included a "No Trespassing" sign, i.e. all signals that the premises owner wished to exclude intruders. The presence of all three of these indicia also suggests that anyone entering onto the property would know, absent permission from the landowner, that they were not privileged or otherwise licensed to enter the premises. Moreover, because the officers at the scene had uniformly noted this information it was reasonable for them to assume that Todd was similarly aware of these facts,

16

and to conclude that he was knowingly committing the crime of criminal trespass in the second degree. *See Hunter v. Bryant*, 502 U.S. 224, 226 (1991) (explaining qualified immunity protects officers "who reasonably but mistakenly conclude that probable cause is present are entitled to immunity") (citation omitted).

Significantly, even if at one time, Todd and the others in his group believed they had a license to enter the property, the 9-1-1 call and the ensuing confrontation with an armed homeowner, doc. 17 at 6, should have indicated the revocation of any such license. When the Defendants arrived at the scene and noticed that Todd was still present, this information clearly provided a reasonable basis for concluding that Todd was in the process of committing a criminal trespass in the second degree by remaining unlawfully "upon real property which is fenced or enclosed in a manner designed to exclude intruders." ALA. CODE § 13A-7-7. Accordingly, because it was reasonable for the Defendants to believe, given the circumstances and the information known to them at the time, that Todd was committing the crime of criminal trespass in the second degree, they possessed, at the least, arguable probable cause to arrest Todd and are consequently entitled to the shield of qualified immunity.

For the foregoing reasons, the Defendants are entitled to qualified immunity, and their motion for summary judgment, doc. 42, is due to be granted. An order dismissing this case will issue separately.

**DONE** the 14th day of November, 2017.

                                                        **ABDUL K. KALLON**
                                        UNITED STATES DISTRICT JUDGE